May it please the Court, Kristi Hughes from Federal Defenders on behalf of Mr. Kyle. The probation search of Mr. Kyle's home was unreasonable under the Fourth Amendment because it was not supported by reasonable suspicion. As I noted — Wasn't he on probation? He was, and — And he consented to a search? He consented to the same search condition that the probationer in Knights had consented to, which was with or without reasonable cause. And which — So why isn't his consent sufficient? Well, as I noted in my 28-J letter, under King, this Court made a distinction between violent felons with these serious and intimate prior convictions, like a domestic violence conviction, and lower-level nonviolent convictions. Well, your 28-J is accurate, but I think all that King really did was say, we don't need to address today those questions. We have in front of us a violent felon, and later on it says we don't need to decide whether to do with — whether this ruling would apply to lower-level offenses. I have no idea what those — that means maybe you can help me with that today. So the question before us is not that we have circuit precedent saying you can't do this. We have circuit — we don't — we have an open slate in this circuit. So why is it that that disagreement by somebody who's committed a felony doesn't constitute consent to search? Well, I have two responses, Your Honor. One is I think that Mr. Kyle, with the tax fraud convictions, is exactly the type of felon who was not addressed in King. That was exactly what was left open. And so you're right, this is a bit of a clean slate, but we — Maybe, because I don't know what lower-level offenses means. But at least it's factually distinguishable from King. Well, what they were clear about is that they — the holding specifically applied to violent felons, and Mr. Kyle doesn't have any violent felons. Okay, so — but it's still open, so tell us why it shouldn't apply. So if we look at Sampson and we look at the amended panel opinion in King and the en banc opinion in King, we know that there is a clear distinction between the privacy rights of parolees and probationers. Do we know that? Or is that something the Supreme Court's left open to? I don't think so. They very clearly go through in Sampson and talk about how parole is a variation of imprisonment and all of these rights that parolees give up. And then this court in King, the en banc court in King, actually took the case en banc to note that its prior precedents didn't account for that important distinction that Sampson made between parolees and probationers. And then in the panel opinion in King, the court noted, well, Mr. King is different from a parolee, so he doesn't have zero privacy interest. He has just a small privacy interest. But I guess I'm asking it for questions, so let me be more precise. Sure. What — what importance does the agreement that Mr. Kyle signed have here? I understand that there may be a difference in the ability of the government to conduct searches of parolees and probationers, but he and Mr. Kyle signed an agreement as a condition for getting probation that said, I agree that my apartment or my residence can be searched any time without — without any cause. What's the — what is the consequence of that agreement in this case? Well, what the Supreme Court said in — in Knight and this court said in King is that it's one of the factors — it's a salient circumstance, but it's one of the circumstances in the totality of the circumstances analysis. And so that does diminish his privacy expectation, because he did agree to the search with or without reasonable cause. But it doesn't completely extinguish it, because then again, he's in the exact same position as a parolee who's agreed to with or without any cause. And Judge Berzon went in her — went through in her dissent in King the fact that there has to be a point to this different condition, that the condition for Mr. King was — I'm sorry, the condition for Mr. Kyle was with or without reasonable cause, which is different than the standard parole condition, which is with or without any cause. And so while they seem similar, the — the insertion of the word reasonable has to have some sort of meaning. And so it has to have at least a slightly higher individualized suspicion requirement for someone on probation like Mr. Kyle. And it's prefaced by without, though, doesn't that completely eliminate that distinction? Again, I — How can you possibly have a grounds if it says even without it? I understand Your Honor's point, but if they were exactly the same thing, then it would have just been the standard condition of with or without cause, because they are different conditions, and they're — they're assigned to people who are in different states of — of supervision, if you will. So parolees have absolutely — I mean, under Sampson and under King, they really have no privacy interest at all. But this condition has to give them slightly — it has to give probationers slightly higher of a privacy interest, or else there's no distinction between the two conditions. So assume it's slightly higher for a second, just for purposes of discussion. I'm interested here in the procedural posture the case comes up to us in. You — you — you file a motion to suppress below, which essentially says, I know — it's a Sergeant Schultz motion that says, I know nothing. Please, government, you must prove your case. And the government files a response that says, here are the facts as we understand them, not in evidentiary form, and there's no reply. Why isn't the — why does the district judge have to have a hearing if you haven't demonstrated that there's any dispute about the facts? Just because we didn't file a reply? No, just because you haven't — I mean, we've got to put — You don't have a contrary version of the facts. Yeah, you don't have a contrary version. That's a better way to put it. Well, he disputed what the probation — what the probation condition was. And what he said is, there hasn't been reasonable suspicion demonstrated. It wasn't necessarily that there wasn't. That's a legal argument. What — what fact dispute did you have? There were no facts. That's what he had argued. The facts are he goes to the airport and he's got this screwy identification. That — and that's exactly the problem, is all that's ever been discussed is as a screwy identification. There's no evidence as to why. That's what I said. Did you dispute it? Did you say, no, it's not a screwy identification? No, but he challenged — Your Honor, I understand your point. I mean, we're here — we're not asking for an evidentiary hearing. We're here on the legal issue of there was no reasonable suspicion. So he didn't — he didn't dispute whether or not it was true. Well, that's exactly the point. That's the question I'm getting at. You basically said to the judge, we don't dispute the facts. We say, as a matter of law, you didn't have the right to search the house. There really is no reason for an evidentiary hearing, and it's just a legal question, isn't it? Correct. Okay, so let me go back then, and that's helpful. If, in fact, you don't dispute that your client was stopped at the airport and that the TSA thought there was a problem with identification, whether or not it was an actual problem or not, and that was communicated to the government, which then asked the probation officer to conduct the search, why doesn't that, as you say, add that little something more that gets you above no suspicion at all to get you to the reasonable suspicion level? Well, because, as this court noted in Cervantes, the Fourth Amendment requires facts. We don't go on conjecture or conclusion. Well, but you see, that's where we're circling each other here. You're saying you don't dispute that your client was stopped at the airport and that a TSA agent, correctly or incorrectly, looked at documentation and said, this doesn't look right to me, and that that information was eventually communicated to the government, which then asked the probation officer to conduct a search. Why isn't the fact that a TSA agent looked at documentation and thought it wasn't appropriate, reasonable suspicion, to think that your client might be involved in producing false documentation, which is consistent with his criminal history? Because under the Fourth Amendment, again, in Collin, in Thomas, in Cervantes, it's clear that reviewing courts do not take the officer's word for it. When it comes to the Fourth Amendment, and reviewing whether or not the suspicion is reasonable and would allow for a search. But isn't that a legal question? In other words, if you don't dispute the fact, if you don't dispute the basic fact that somebody looked at this documentation, correctly or incorrectly, it may have been perfect documentation, and said, it doesn't look right to me, this is a TSA agent, and passed that suspicion on to the government, why isn't that enough? Well, Thomas, which we cited in our briefs, an FBI agent said, this man has just left a stash house, and so you should go look into him and see what that box is that he put in his car. And this court said, that's not enough. Why is it a stash house? You have to explain to us why you suspect this, so we can determine whether or not your conclusion that it's a stash house is reasonable. And it's the same thing. I'm going to ask you about two things. In a normal context, for example, if this is a violation, the first thing that would be announced is that we contest. We contest or we don't contest. I don't find anything about this, but there doesn't seem to be any contesting of the underlying facts. You simply announce that you haven't received the discovery, you haven't received the copy of the reports from the probation officer. Isn't that a tacit acknowledgment that you're really not contesting the facts, you just want to make sure that you have them? And second, why isn't that harmless error? Well, to the first point, it's always the government's burden to demonstrate that the suspicion was reasonable. And so when the government doesn't come forward with any facts, there is no reasonable suspicion, regardless of whether or not the actual facts were challenged below. You're talking about facts in the record, as opposed to facts in existence. Correct, but the government has never even described what those facts in existence are. They're not even alleged in the government's response to the motion. The government just continues to say the documents were suspect, the notary stamp was fraudulent. But there's no explanation of why they were suspect or why they were fraudulent. And so that was what was challenged below, is you have to explain why. And that's why this Court in Cervantes and Thomas and Collin remanded, is that we don't just take their word for it about this is a stash house or this is a vehicle code violation. And I'm sorry, Your Honor, second question. Harmless error. I don't know how this would be harmless. I mean, there's nothing in the record to support the reasonable suspicion. Well, I mean, we actually had a trial here, and the probation officer testified in the trial. Unfortunately, the probation officer was not asked about the underlying basis for the search for some reason. But if we had been asked two or three questions about that, that would have negated it, it would have been harmless, so there would be no, we would have no problem or no issue now. But it's harmless, obviously, because the facts really aren't contested. That's what deterrence has been asking about. Well, I think, Your Honor, the fact that the probation officer wasn't asked those questions because there just aren't those facts in the record. Had the probation officer said, oh, yeah, this is a stamp that was 5 inches tall and notary stamps are usually 1 inch tall, then we would have the reasonable suspicion, we would have the facts in the record to allow this court or the district court to determine whether or not that was reasonable suspicion. But we don't have any of those facts. And the point isn't whether or not they were disputed. Mr. Kyle doesn't even know why that these various officers thought that his documents were fraudulent. So he doesn't even, there's no way to even dispute that. The notary stamp was never ---- Your Honor, the only way to dispute it, you could get up there and say these are valid documents, right? The documents were never even placed in the record. I mean, I don't think that he has a ---- Well, you could have said I had valid identification documents. That's how he could have disputed it. He could have, but the government, I mean, the government never even made the initial showing of the ---- But you just said he had no way to dispute it. And I'm saying he did have a way to dispute it. He could have testified that he had valid government-issued documents, which he, for whatever reason, didn't see fit to do. I guess I misspoke. There wasn't even a threshold showing of what those documents were, and so he couldn't ---- I see you're over your time. Is there anything else? Perhaps you could give her a minute for rebuttal. Yeah, I will. I do have some questions that I want to ask the government. I'm going to ask it now. Well, I want to ask the government this, too. It strikes me this comes up in a strange procedural posture. This is what happens in court of Judge Huff, as I understand it. The initial dispute is about discovery. You want a bunch of discovery, and Judge Huff says, well, let me consider first whether or not I can just allow a suspicionless search, then you won't need it. And then she shows up the next day and says, well, I think a suspicionless search is okay, but I also think there's suspicion here, and says why. And the probation officer is standing by ready to testify, and the probation officer is let go. Nobody puts the officer on the stand at that point because the judge has made a ruling, but the officer was there. So it strikes me, and you're seeking reversal of the conviction. I'm trying to figure out if we think you're right, what should we do? It does seem unfair to say to the government, who was prepared to put the officer on the stand, your conviction can't stand. Should we remand it for an evidentiary hearing? No, Your Honor, the government initially said that as a matter of law, an evidentiary hearing wasn't warranted. Right, because they wanted to reach the broader issue of whether suspicionless searches of probationers are okay. But they said, if not, Your Honor, we're prepared to put on the probation officer to demonstrate our suspicion, and the judge says I don't need it. Well, the government never even asked to make a record, never even said, well, I understand your point. My question is, given all that, shouldn't we just remand for the hearing that the judge didn't have? I don't think so in light of the burden that the government has to demonstrate reasonable suspicion. So where they have that heavy burden, that would constitute essentially a do-over. When the probation officer was there, the government could have put him on and asked five minutes of questions and established the record for appeal. Even though the judge said, I don't want to hear from him. I mean, the government didn't even ask, and then was shut down by Judge Hoff. The government just said, okay. After they had said, we don't need an evidentiary hearing. And on appeal, they've never once asked for an evidentiary hearing. They've defended reasonable suspicion on the facts and the record. Ms. Hughes, thank you. Thank you, Your Honor. Morning. Your Honors, we don't even need to reach the court. We get your name for the record. I'm sorry. May it please the Court. Jamie Parks of the United States. We're making an audio recording, so we want to make sure we get it. Yes, Your Honor. The Court need not even reach the question of reasonable suspicion, because in this case, you had someone convicted of not a low-level offense, but a serious felony offense. And as a virtue of that, he had a diminished expectation of privacy. On top of that, he was subject to a valid, unambiguous waiver condition. And I did want to draw the court's attention. Here's my problem, though. You're saying we don't need to reach the facts because we can reach a question of law that the circuit's never ruled on. I would prefer to do it the other way. If I could dispose of the case on the facts without reaching a broad question of law that the circuit left open in King, then I would prefer to do so. In that case, Your Honor, I think that I can't, that I have to reach that broader issue. But it's sort of strange to say, reach the broader constitutional issue, because you don't have to worry about the facts in this case. You ought to reach the broader constitutional issue. What facts are actually in the record? Is there anything anywhere in the record establishing any of the facts underlying the fraudulent notarization or anything? There was the undisputed assertion in the government's papers and the pre-sentence report that the defendant used a document, which is the defendant's document, that bore fraudulent notarization. That's a pre-sentence report, though. Where is the suppression hearing level? It was in the government's papers. It was in your opposition to the motion to stress. That's correct, Your Honor. Is that sufficiently evidentiary to establish your burden? When it's not contested by the defense, Your Honor. I mean, you're talking about documents that were, that belonged to the defendant. Well, I understand. But you've got an assertion. What happens is you've got a brief that says, here are the facts as I understand them. And some of the reasons? No, not in evidentiary form. No affidavits, no references to anything of record. So the question that Judge Vincent and I are interested in, is that enough? Your assertion that these are the facts, is that enough? I think in this case where they're uncontroverted, it is. But I think the Court is narrowly focusing in on the fraudulent notary stamp when there were other facts that the Court should consider. This is a defendant who was about to leave the State of California in violation of his conditions of probation. He did, in fact, board an airport after the, board an airplane after the harbor police verified his identity. Would that give rise to reasonable suspicion to search his apartment? Yes, because as the Court set forth in Knight, the degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring. In this case, the defendant is violating his probation by leaving the State of California when he comes back, he's contacted by the FBI, a contact that's not reported to his probation officer. He's using a fraudulent notary stamp, and he's under investigation by the IRS. Well, but let's focus on leaving the State. Why, if the criminal conduct is leaving the State, which I assume is criminal because it violates the probation agreement. It's really not criminal. It's a violation of the probation agreement. Why do you need to search his apartment? What do you hope to find? There's a legitimate probationary purpose to do it, and in conjunction with the legitimate probationary purpose, there's a legitimate probationary purpose to do it. So you're saying that. What is the legitimate probationary purpose? Let's assume the only information you have, no bad ID, or the guy attempts to leave the State in or leaves the State in violation of his agreement. Does that give rise to reasonable suspicion to search his apartment? It does, because he has violated the law as a probationer, someone who has a diminished expectation of privacy. He's violated the conditions of his probation. And so given the likelihood compared to the State. Was there a violation hearing in the State proceeding? He was violated, and I don't think – I'm not sure, Your Honor, but I believe they didn't proceed with it in light of the Federal gun charges that were filed. Wouldn't that be important, that there was a violation petition filed? It depends. If you want to look at the Court's earlier precedent, certainly considering the fact that there was a probationary purpose of a search is relevant. So I think if the Court's applying the totality of circumstances that were articulated – the standard that the Court has essentially always used, it is a salient circumstance. There are some things that you can infer as a matter of law that are supported by some underlying facts that don't necessarily have to be in the record. If there was a violation, for example, I think that legally would mean you don't have to prove reasonable suspicion all over again.  You're not saying there was a violation. There was one scheduled and then postponed or canceled? I think it's set forth in the PSR what the exact nature of the violation proceedings were. But my position is where law enforcement knows without a shadow of a doubt that a probationer subject to a valid Fourth Amendment waiver condition has violated his probation, then it is appropriate to – How do we know that? How did we know that then? Because he traveled out of State. How do we know that? I don't see where in your document he was traveling out of State. It's in the government's reply papers, and it's also set forth in the PSR. Where was he flying to? I don't remember what State he went to. He was going to a tax conference, which may or may not be in the record. I think the – Go ahead. Please, please. I'm looking at your response, which is what I gather the judge relied on in terms of what the facts were. And it doesn't indicate where he was traveling to. If I – for all we know, he was flying from San Diego to San Francisco. Right. He was not leaving the State. So do we know? Right off the bat, I gather we don't know where he was flying to, that he was leaving the State. I don't know offhand, but it is a – That's kind of critical, because you said that – It is alleged in my papers, Your Honor. Where is it alleged in your papers? ER-12. When Kyle traveled, he used a – I'm sorry. Kyle was already in violation of his probation when he traveled out of State without the permission of the Probation Department. When he traveled, he used the document bearing the fraudulent notary stamp. In addition, he'd been cited – So where was he traveling to? Traveling isn't a violation. It's out of State. Right. In my papers, all I put was out of State. I'm not sure what it meant. Okay. So you start off by saying we have a clear-cut violation, he's traveling out of State, but we don't have any evidence that he traveled out of State from what you're saying. Right? You have an uncontested assertion that he traveled out of State. Well, but that's our question. Is it enough that you assert something to establish probable cause or reasonable suspicion or whatever level is required here without any evidentiary material in the record, an affidavit, an avowal, a copy of a record? Is it – because it's just enough that you representing the government say so? When it's uncontested, I think that's fair to say. And when it's not completely material to the court's determination. Obviously, it was a factor. The reasonable suspicion was a factor in the court's determination. But you also have – you have this balancing test, the totality of the circumstances that include a severely diminished expectation of privacy. How do we know that the notary stamp was fraudulent? That wasn't an allegation made by the FBI. No, I know it was an allegation, but how we know it's true is what I'm asking you. Because it was uncontested by someone who obtained or created the document. I don't know, Your Honor. Was it just somebody's opinion or? I mean, the district attorney was investigating charges for use of a fraudulent notary stamp. That was not the Federal case. It didn't implicate the use of the fraudulent notary stamp. I know, but if I'm the trial judge and they say there's a fraudulent stamp, then I ask you, how do you know? And you just, like, I don't know, you just think it's fraudulent? You didn't tell us. Does it have Arnold Schwarzenegger's picture on it? It does not have Arnold Schwarzenegger's picture on it. But those documents were not part of the record, so to know. That's a problem, isn't it? It is a problem. And that arose from the government's posture that it wasn't necessary to reach the suspicion. I understand that. Let me ask. Let me ask. Do you have any case law anywhere that says this can be treated as harmless error when the facts, the underlying facts are not really disputed but there's nothing in the record? Do you have an absence in the record of any facts supporting this decision to search? I think that you, the answer to your question, Your Honor, is no offhand. But for the court to hold that in a situation where the facts are uncontested by the defense that an evidentiary hearing is necessary would mean that an evidentiary hearing would have to be held in every case. But that's not quite an accurate description of this case, I think. It is true that no contest was offered, but the defendant kept saying, I have no idea about these facts. Probably disingenuously, but I have no idea about these facts. And I asked Judge that you ask to put something in the record so I can see what they have. Can the defendant ask for that? And the defendant didn't say here, as the defendant says in some cases, yes, those are the facts, but I doubt that they reach probable cause. The defendant in this case said, that's what you say are the facts, but I don't know because a lot of this stuff happened without me there. So put on somebody and make a record. And you were prepared to, but you didn't. So aren't you stuck with the absence of the record that you have? I don't think there is an absence of the record in this case because where the facts, as alleged by the government, are uncontested by the defendant, I think that they are fair to rely upon. Do me a favor. In your brief, you're really relying on the King case, it seems to me. That's correct, Your Honor. And King involved a violent probationer and not one who I think is accepted, nonviolent. He is accepted nonviolent, but what the Court said in King was they are, the Court is reserving, analyzing a situation where you have a valid Fourth Amendment waiver and a non-serious offender, not a nonviolent offender. And in this case, you have a convicted felon who has caused, between the State and the Federal Government, over $400,000 worth of tax loss. He's most certainly a serious offender. And the conduct that gave rise to some of the reasonable suspicion, the use of those documents, was directly related back to his tax fraud felon. But King doesn't distinguish between somebody who's on probation for a misdemeanor and somebody who's on probation for a felony. It says a violent probationer. But in King, the Court is describing the defendant, the probationer that was before the Court. King is not dispositive on this issue. It expressly reserves the question of what would happen where you have consent to search in the form of a Fourth Amendment waiver, a probationer with a diminished expectation of privacy, and a non-serious offense. That's the language in the opinion. And this is a serious offense. And I think that for the Court to suggest that an individual probation officer should be making an analysis about the severity of different levels of felonies, I think would create a disaster in the implementation. Thank you very much, Ms. Parks. Ms. Hughes, you exceeded your time, but we'll give you a minute and rebuttal if you'd like. Three very quick points. The language actually in the amended opinion in King, which the government has never addressed in its papers, is it's directed at a suspicionless search condition of a violent felon's probation agreement. It just leaves the issue open. You agree. Correct. But we're just we're focusing on low level, high level, and it really focuses on a violent felon. That was what had diminished his expectation of privacy. How do we define high or low? I mean, if I understand it, this guy could have gotten three years in prison for his state charge, and the guy in King could have gotten four years. I mean, it's pretty close. And I think that's what I'm trying to note, is that the lower or higher level offender isn't actually what was dispositive of the Court's reasoning in King. So we wouldn't look, under your construct, we wouldn't look at what the maximum sentence would be. We would look whether it's violent versus nonviolent or felony versus misdemeanor. How do we draw the line? What would you say? Well, I don't know that we need to get into the hypotheticals here, because tax fraud convictions and domestic violence convictions, there's clearly a line. That's exactly the problem. You know, in Florida, where I'm from, we've had any number of cases over the last two years on that one little term, what is a violent felony, because we've got all so many variations of felonies graduated that are on the same statute, really. And we've had numerous matters of litigation because nobody can determine what violent is. The distinction between probation and, I mean, between probation on a felony and probation on something else is pretty clear-cut. There's no question about that. Why can't we just leave it at a felony is equivalent of a serious? Well, I just think it's not in line with the Court's reasoning in King, which was the only reason that his privacy expectation was diminished was because he had a conviction that was of a serious and intimate nature that was the violent corporal injury on a cohabitant. Suppose this were Bernie Madoff. You know, he's committing serious, I mean, you know, catastrophic financial crimes from his house. Would he – could they search his house if he were on probation without cause, nonviolent felon? Could they search – if they had reasonable suspicion, then yes. Well, without reasonable suspicion. Not under the distinction that this Court drew in King. I agree that that's obviously a serious violation or a serious felony, but it doesn't have the violence that diminishes his reasonable suspicion. But here's where I need to help. But it doesn't give the public the protection that, you know, probation is also supposed to provide. Well, they would have the protection. All the government would have to do is to come into court and explain that there are reasons for wanting to do the search. They have no reason. And he's a guy who's dangerous with a computer, so they want to check on him every once in a while. Then I think they should ask for his consent. I mean, I think there's other ways to get around it. I got his consent. Yeah, I got his consent. I don't think that a suspicionless search, just because he has those egregious convictions in his past, is in line with the King opinion, which delineates the violence. Here's my problem. Maybe you can't help me with it. All the King says is that we're just deciding today about violent offenders. We don't know what we would do with a nonviolent offender. We have a nonviolent offender here. It's not enough for you to say to me, King didn't treat a nonviolent offender, because that's the case in front of you. It's a nonviolent offender. So tell me why, for a nonviolent offender who's committed a serious crime, a felony, that we shouldn't end up the same way as King? Here's why, Your Honor. So if you think of the expectation of privacy on a spectrum, probable cause, someone who hasn't done anything wrong, very high. Parolees, they're at sort of the zero mark. So we know that King was slightly higher than a parolee because of this violent felony. So we know that someone who's a nonviolent offender. Here's my question. I'm sorry. We're going over time, and maybe this is not an answerable question. Why does the violence of the offense diminish his expectation of privacy more than a very serious nonviolent offense? What is there in violence that diminishes your expectation of privacy in the home? So somebody who's a domestic abuser of a serious crime, to be sure, under your view, has a diminished expectation of privacy in the home once he signs this probation condition. But Bernie Padoff, who stole with a pen, not a gun, doesn't have a diminished expectation of privacy. I'm trying to figure out why you make that argument. What's the legal rationale for that argument? I think what the court was getting at in King is that when you have someone who has violent convictions in his or her past, the governmental interest is very high because we want to protect people from violence. And so as that privacy interest goes down, the governmental interest goes up as this person is more violent. And so, therefore, when you weigh it in the totality of circumstances, we come out the way we don't – I don't want you to come out. Let me make one more quick point on the evidentiary hearing. Sure, and then wrap it up. Your Honor, there were no docs, the allegedly fraudulent documents. They weren't even submitted as part of the government's motion. And so even if they hadn't called the probation officer at the evidentiary hearing, they never put forth any sort of evidentiary basis for this reasonable suspicion. Some of these things can be cured after the fact. They're curable deficiencies. And let me ask you before you sit down, was there actually a violation of his State probation at any time? I believe, Your Honor, that they violated him for not paying restitution. They never went forward on this fraudulent document or the traveling out of State. Okay. Because if they had, I think that would have cured it after the fact. But they did not. Not from my understanding of the record, Your Honor. All right. Thank you. Thank you. Court is adjourned. Thank you. The case just argued is submitted. Thank you.
judges: Vinson, Silverman, Hurwitz